IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RWIP, LLC and RODNEY WHITE, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | ________________ |
| | ) | |
| GRAND IMAGE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| ________________________________ | ) | |

**COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF**

RWIP, LLC and RODNEY WHITE (collectively "Plaintiffs") file this Complaint for copyright infringement and breach of contract and state as follows:

## I. Introduction

1.

This case is about an art publisher, Grand Image, Ltd. ("Defendant"), intentionally violating the rights of an artist, Rodney White ("White"). White entrusted Defendant with a specific set of privileges pursuant to a written agreement ("Agreement"), for the purpose of assisting White in the commercialization of his art. Defendant used its position of trust to knowingly violate White's exclusive rights that, all to the detriment of Plaintiffs.

2.

After repeated failed efforts by White at an amicable resolution, Plaintiffs were left with no choice but to bring this suit for copyright infringement and breach of contract.

## II. Parties

3.

RWIP, LLC ("RWIP") is a corporation organized and incorporated under the laws of the State of New York with a principal place of business at 14 Sagamore Way South, Jericho, New York 11753.

4.

On February 25, 2011, eStudio39, LLC ("eStudio") assigned to RWIP all title, rights, interest, ownership and all subsidiary and/or related rights granted to it in the amended agreement of assignment between White and eStudio dated October 1, 2009 ("October Agreement"), including but not limited to the right to secure copyright registration therein and to any resulting registration in RWIP's name as Owner and Applicant, and the right to secure renewals, reissues and/or extensions of any such copyright and/or copyright registration in the United States of America and/or any foreign country. A copy of this assignment is attached hereto as Exhibit A and the October Agreement is attached hereto as Exhibit B.

5.

Upon assignment from eStudio, RWIP, LLC became the bearer of the rights eStudio had in Rodney White's works pursuant to the October Agreement. Rodney White gave written consent to the assignment from eStudio to RWIP, LLC.

6.

White is an individual residing in Brooklyn, New York and a party to the Agreement sued upon here.

7.

Defendant is a company which, according to its website, is engaged in the business of "publishing images," "selling original images" and "licensing images."

8.

Defendant is incorporated under the laws of the State of Washington with a principal place of business at 4730 Ohio Avenue South, Seattle, Washington 98134.

9.

Defendant may be served upon its registered agent, D. Douglas Matson at his office, which is 701 Fifth Avenue, Suite 7220, Seattle, Washington 98104.

## III. Subject Matter Jurisdiction

10.

This is an action for copyright infringement pursuant to the United States Copyright Act (17 U.S.C. § 101 *et seq*.) and for related state law claims for breach of contract.

11.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338(a) and (b) as it is a federal question based on the United States Copyright Act.

12.

This Court has supplemental jurisdiction over the state law claims brought herein pursuant to 28 U.S.C. § 1367(a) because they are related to, form part of, and arise from the same controversy as the federal claim herein.

## IV. Personal Jurisdiction

13.

Defendant transacts business within the State of Georgia. Furthermore, Defendant regularly does and solicits business in the State of Georgia. Defendant also derives substantial revenue from goods used and consumed in the State of Georgia. Further, Defendant engaged in tortious conduct outside the State of

Georgia which is causing tortious injury within the State of Georgia.

14.

Defendant has also sent letters to defense counsel in Atlanta, Georgia threatening to sue White and others for breaches of the Agreement, various business torts and copyright infringement .

15.

Defendants also have sufficient minimum contacts with the State of Georgia to satisfy the Due Process Clause of the Fourteenth Amendment, for personal jurisdiction purposes.

## V. Venue

16.

Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) because a substantial part of the events giving rise to this action occurred in this jurisdiction.

## VI. Facts

### *A. White*

17.

White is a well-known and commercially successful artist. He was born in Augusta, Georgia in 1976. He lived in Georgia his entire life until 2005, when he moved to Brooklyn, New York, where he now resides with his wife. Here is

Rodney:





18.

White describes his art as:

> I use visual cues from vintage advertising and Americana to hearken back to a bygone era of optimism. My art is an open journal of my personal path of belief and positiveness. It illustrates the moment of enlightenment that we all seek. One can see the methodology behind my thinking and witness my personal growth by looking at my art.

19.

Here are just a few of Rodney's powerful paintings:

















20.

White is widely popular and enjoys extensive commercial success. At least one hundred and fifty (150) of his paintings have been made into prints and posters, the majority of which are sold by various third-parties throughout the World in retail locations and on the internet.

*B. Defendant and the Publishing Agreements*

21.

In October 2004, White entered a publishing agreement with Defendant titled, “Exclusive Poster, Limited Edition and Printed on Demand Publishing and Distribution Agreement and Sublicensing Agreement.” (the “Original Agreement”). A copy is attached hereto as Exhibit C.

22.

The Original Agreement was modified by the Agreement on November 1, 2005. A copy of the Agreement is attached hereto as Exhibit D.

23.

White terminated the Agreement in June 2009, if not earlier, in accordance with the termination provision thereof (Agreement, II. Term: Renewal Term).

*C. Canvas Transfers*

24.

As a matter of background, a canvas transfer is a copy of a painting. This production technique simulates a painting on a piece of canvas.

25.

To make a canvas transfer, a poster containing the desired image of the painting is treated with chemicals and the chemicals, in turn, cause the ink to separate from the paper. That ink is then transferred to the canvas in the same form it was in while on the poster.

26.

Creating a canvas transfer from a poster is not a right acquired by someone who purchases the poster itself, since buying a poster does not give the buyer the right to make a copy of it.

27.

Defendant sells and has sold posters of White's art to third-parties who, in turn, have used and use those posters to create illegal canvas transfers.

28.

Defendant makes and has made such sales knowing that those third-parties were using and use the posters for that illegal purpose.

29.

Such third-parties include, but are not necessarily limited to, Bentley Publishing Group, Inc. ("Bentley"), LeftBank Art, StudioAnto Design Inc. (d/b/a/ Arttocanvas.com, Bloomfield Framedesign, Art Season Corporation (d/b/a FineArtOnSale.com) and Art.com.

30.

Defendant told at least one of the third-parties, Bentley that Defendant had the legal right to give Bentley the right to create canvas transfers from posters.

31.

Defendant may have similarly misled other third-parties.

32.

While, according to the Agreement, White should receive a commission on Defendant's sales of posters to third-parties, he receives no commission for sales of canvas transfers. Furthermore, White has no way to police the quality or quantity of the canvas transfer products and canvas transfer products are often of a poor quality and diminish the integrity of the original art and White's reputation.

33.

As explained in more detail below, Defendant has taken additional liberties, other than those involving canvas transfers, with White's art that it knew it was not entitled to take, resulting in breaches of the Agreement and damages to Plaintiffs.

## *VII. Counts*

### *A. Count One: Copyright Infringement In connection with the Canvas Transfers*

34.

Plaintiffs incorporate into Count One, Paragraphs 1 through 33 above and 41 through 85 below with the same force and effect as if again set forth fully herein.

35.

RWIP owns the copyrights in White's art.

36.

RWIP owns the United States copyright registration for White's painting titled, *The Hardest of Easy Choices* (a.k.a. *Seek Happiness*). This is Certificate of Registration number VA-1-760-944, a copy of which is attached hereto as Exhibit E.

37.

The unauthorized canvas transfers of White's *The Hardest of Easy Choices* are exact copies, though of a lesser quality than, of White's original art.

38.

By participating in the making, selling, marketing and distribution of canvas transfers of White's *The Hardest Of Easy Choices,* Defendant has and continues to infringe upon RWIP's exclusive rights under section 106 of the United States Copyright Act.

39.

Being in the art publishing business, Defendant is well aware that these canvas transfers infringe upon the copyright held by RWIP, but continues to engage in the infringing activity nonetheless. Therefore, Defendants' infringement has been, and continues to be, willful and without privilege.

40.

Plaintiffs have been damaged by Defendant's infringement in the form of lost sales, lost profits and lost goodwill.

*B. Count Two: Contributory Copyright Infringement*

41.

Plaintiffs incorporate into Count Two, Paragraphs 1 through 40 above and 46 through 85 below with the same force and effect as if again set forth fully herein.

42.

At all relevant times, Defendant has known that third-parties are creating canvas transfers from posters that Defendant is supplying to such third-parties, including but not limited to, posters of *The Hardest of Easy Choices*.

43.

Defendant knows that such activity infringes upon RWIP's copyrights, as described in connection with Count One, above.

44.

Defendant is inducing, causing and contributing to the infringing activity by continuing to supply paper posters to those third-parties while knowing hat those posters are being used to infringe Plaintiffs' rights.

45.

Defendant is liable to Plaintiffs for damages relating to this contributory infringement.

*C. Count Three: Vicarious Copyright Infringement*

46.

Plaintiffs incorporate into Count Three, Paragraphs 1 through 45 above and 52 through 85 below with the same force and effect as if again set forth fully herein.

47.

At all relevant times, Defendant has known that third-parties are creating canvas transfers from posters Defendant is supplying to such third-parties, including but not limited to, posters of *The Hardest of Easy Choices*.

48.

Defendant also knows that such activity infringes upon RWIP's copyrights, as described in connection with Count One, above.

49.

Defendant has a direct financial interest in the infringing activities of these third-parties. Defendant receives a financial benefit from its sale of paper posters of White's works, including but not limited to, *The Hardest of Easy Choices*, to third-parties who, in turn, use the paper to create unauthorized and infringing canvas transfers.

50.

Furthermore, Defendant has the ability to prevent this activity by not selling paper posters of White's works, including *The Hardest of Easy Choices*, to such third parties, but Defendant has failed to cease such sales to such third-parties.

51.

Defendant is liable to Plaintiffs for damages caused to them as a result of this vicarious copyright infringement.

*D. Count Four: Breach of Contract by Knowingly Consenting to the Making of Canvas Transfers*

52.

Plaintiffs incorporate into Count Four, Paragraphs 1 through 51 above and 58 through 85 below with the same force and effect as if again set forth fully herein.

53.

The Agreement requires that White pre-approve all of Defendant's uses of any image of White's works. For example, the Paragraph titled, "I. Grant of Rights: Publishing Rights," states that Defendant can exercise its rights "only after obtaining Artist's approval for each and every image used and the method of use." Also, the Paragraph titled "I. Grant of Rights: Maintenance of Exclusive Rights," states that "[n]o image may be published without Artist Approval."

54.

Defendant has *never* had the right to create canvas transfers of White's works and thus has never had the right to give any third-party permission to create canvas transfers of White's works.

55.

White has never granted Defendant the right to approve of and/or permit any party to produce canvas transfers.

56.

According to the Agreement, "[n]o sublicense or assignment will take place without Artist's approval." (Agreement, "I. Grant of Rights: Sub-licenses and Third Party Introductions.").

57.

By purporting to pass the right to create canvas transfers to third-parties, including but not limited to Bentley, Defendant has breached the Agreement.

*E. Count Five: Breach of Contract by Permitting the Making of Prints on Demand ("POD")*

58.

Plaintiffs incorporate into Count Five, Paragraphs 1 through 57 above and 63 through 85 below with the same force and effect as if again set forth fully herein.

59.

According to the Paragraphs of the Agreement, quoted earlier in this Complaint, White must approve all uses of any image of his art.

60.

Under an unauthorized sublicense from Defendant, third-parties, including but not limited to Art.com and Bentley, are making POD of White's art.

61.

Plaintiffs further believe that Defendant is making prints on demand (POD) of White's works, again without White's approval.

62.

Defendant has created and has permitted third-parties to create POD without White's permission and, therefore, Defendant is in breach of the Agreement. Plaintiffs are entitled to damages resulting from these breaches of the Agreement.

*F. Count Six: Breach of Contract by Sublicensing Without Approval*

63.

Plaintiffs incorporate into Count Six, Paragraphs 1 through 62 above and 70 through 85 below with the same force and effect as if again set forth fully herein.

64.

On or after October 2005, Defendant had the right to sublicense certain of Defendant's rights to third parties if the requested and obtained White's approval (Agreement, "Sub-licenses and Third Party Introductions", Exhibit D hereto).

65.

However, at no time did Defendant have the power to sublicense the right to make "Posters" or "Limited Editions" (Agreement, "Sub-licenses and Third Party Introductions", Exhibit D hereto).

66.

Despite the contractual prohibition described in Paragraph 58, above, Defendant purported to sublicense the right to make "Posters" and "Limited Editions" to third-parties, including but not limited to, Bentley.

67.

By purporting to sublicense the right to make "Posters" or "Limited Editions," or both, to third-parties, including but not limited to Bentley, Defendant breached the Agreement.

68.

Furthermore, White requested to see the terms of the purported sublicense agreements between Bentley and Defendant and between Defendant and Larson Juhl/Artaissance and Defendant, but Defendant refused to supply them.

69.

Plaintiffs have been injured by Defendant's breaches of the Agreement and are entitled to be paid damages for such injuries.

### *G. Count Seven: Breach of Contract by Sublicensing Beyond Permissible Period*

70.

Plaintiffs incorporate into Count Seven, Paragraphs 1 through 69 above and 75 through 85 below with the same force and effect as if again set forth fully herein.

71.

Under the Agreement, all legal sublicensing by Defendant to third-parties would cease upon termination of the Agreement (Agreement, "Sublicense Term," Exhibit D hereto).

72.

Despite this provision of the Agreement, Defendant continues its illegal attempt to continue sublicense agreements with third-parties, including but not limited to Bentley.

73.

Furthermore, Defendant's purported sublicenses to third-parties, including but not limited to Bentley, have previously expired but Grand Image purports to continue such sublicenses in violation of the Agreement.

74.

By continuing the sublicense or sublicenses, Defendant is in breach of the "Sublicense Term" provision of the Agreement and Plaintiffs are entitled to damages from Defendant for such breaches.

*H. Count Eight: Breach of Contract by Failing to Pay Royalties*

75.

Plaintiffs incorporate into Count Eight, Paragraphs 1 through 74 above and 79 through 85 below with the same force and effect as if again set forth fully herein.

76.

Under Section "III. Royalties" of the Agreement, 12% of the fees Defendant received in exchange for granting the right to make copies of Rodney White's works were to be paid by Defendant to Rodney White.

77.

Defendant breached the Agreement by not paying all royalties on all fees Defendant received in exchange for licensing the right to make copies of Rodney White's works.

78.

Plaintiffs are entitled to damages from Defendant for such breaches.

I. *Count Nine: Preliminary Injunction*

79.

Plaintiffs incorporate into Count Nine, Paragraphs 1 through 78 above and 82 The Creators Project 85 below with the same force and effect as if again set forth fully herein.

80.

Defendant's copyright infringement and breaches of the Agreements, as described throughout the entirety of this Complaint are of a recurring nature and harmful to the consumers as well as to Plaintiffs. Unless enjoined, Defendant will continue these acts thereby causing the public and Plaintiffs further immediate and irreparable damage.

81.

As a result of Defendant's conduct, Plaintiffs are entitled to a Preliminary Injunction.

*J. Count Ten: Declaratory Judgment*

82.

Plaintiffs incorporate into Count Ten, Paragraphs 1 through 81 above and 84 and 85 below with the same force and effect as if again set forth fully herein.

83.

Plaintiffs are entitled to a Declaratory Judgment that Defendant has materially breached the Agreement and thereby forfeited its rights under the Agreement, including under the provision titled, "Sell-off Term."

## VIII. Jury Demand

84.

Plaintiffs demand a trial by jury for all issues so triable.

## IX. Prayer for Relief

85.

WHEREFORE, Plaintiffs request the following relief:

a. a ruling that Defendants have liability as alleged herein;

b. an award of statutory damages, Plaintiffs' actual damages and Defendant's profits;

c. an award of damages for breach of the Agreement, as alleged herein;

d. a preliminary injunctive preventing further copyright infringement;

e. a permanent injunction preventing further copyright infringement;

f. punitive damages based on Defendant knowingly and deliberately infringing Plaintiffs' copyrights;

g. an award of its fees and costs pursuant to 17 U.S.C. § 505; and

h. other and further relief deemed appropriate or necessary by the Court.

This 6th day of June, 2011.

**LILENFELD PC**

*s/David M. Lilenfeld*

David M. Lilenfeld
Georgia Bar No.: 452399
Attorney for Plaintiffs
Lilenfeld PC
2964 Peachtree Road N.W. Suite 720
Atlanta, Georgia 30305
(404) 201-2520 – telephone
(404) 393-9710 – facsimile
David@LilenfeldPC.com